**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MOBIUS CONNECTIONS GROUP, INC., a Nevada corporation, <br><br>                    Plaintiff, <br>   vs. <br><br> TECHSKILLS, LLC, a foreign Limited Liability Company; DOES I-X and ROES I-X, inclusive, <br><br>                    Defendants. | Case No.: 2:10-cv-01678-GMN-RJJ <br><br> **ORDER** |

## INTRODUCTION

Before the Court is Plaintiff Mobius Connections Group, Inc.'s ("MCG" or "Plaintiff") Motion for Summary Judgment or in the alternative Partial Summary Judgment (ECF No. 13). Defendant TechSkills, LLC ("TechSkills" or "Defendant") filed a Response on July 8, 2011 (ECF No. 14) and Plaintiff filed a Reply on June 7, 2011 (ECF No. 17).

Also before the Court is Defendant's Motion for Partial Summary Judgment (ECF No. 21). Plaintiff filed a Response (ECF No. 24) and Defendant filed a Reply (ECF No. 25). Defendant seeks entry of partial summary judgment in its favor limiting Plaintiff's first claim and dismissing Plaintiff's second and third claims.

## FACTS AND BACKGROUND

This suit arises out of a contractual dispute. In October 2006 and May 2007 Defendant TechSkills hired Rear Admiral Christopher Weaver and James Mayfield as consultants on a monthly fee basis for the purpose of developing new sources of funding to TechSkills from various government agencies. (*See* TechSkills Answers to First Request for Admissions, Ex. 1 attached to MSJ, Nos. 62, 64, pp. MSJ 16–17, ECF No. 13–1; Poland Depo., Ex. 2 attached to MSJ, MSJ 33:17–25, MSJ 35:25–MSJ 36:13, ECF No. 13–2.) TechSkills eventually terminated

these individual agreements and entered into a Consulting Agreement with Town Hall Foundation. (*See* Consulting Agreement, Ex. 4 attached to MSJ, ECF No. 13–4.) TechSkills, through its CEO Kevin Paulsen, agreed that Town Hall Foundation would serve as a placeholder entity in the contract until the rights and duties of the Consulting Agreement could be assigned to a yet to be created consulting entity — MCG. (*See* Poland Depo. at MSJ 60:22– MSJ 61:21.)

The Consulting Agreement provides several areas for Town Hall Foundation to provide selling and marketing services designed to assist TechSkills. (*See* Consulting Agreement at ¶ 1.1.) These areas include:

> (i) solicitation of federal contracts, negotiation of federal contracts, and implementation and administration of federal programs awarded that are related to the Company's Injured Warrior Initiative (hereinafter "IWI"), (ii) projects involving the Departments of Defense, Labor, Education and Veterans Affairs, which expand Company's revenues from DVA's education programs currently generating $120,000 on an annual basis (but on a pro rata basis for 2007), (iii) projects involving Ottawa University that expand Company's revenues beyond current revenues from existing business with Ottawa University . . . (vii) such other projects clients or groups of clients as may be designated by the Company from time to time (collectively the "Project Universe").

(*Id.*) In the Consulting Agreement, TechSkills promises to pay Town Hall Foundation twenty-five percent (25%) of all cash basis profits generated by the performance of series in those areas defined in the "Project Universe," such payments made within 30 days of the end of each calendar quarter. (*Id.* at ¶ 3.1.) The Consulting Agreement further provides that compensation to Town Hall Foundation will continue for a two year period following termination of the contract. (*Id.* at ¶ 2.2.)

On May 27, 2008 TechSkills entered into a First Amendment to Consulting Agreement with Town Hall Foundation and MCG in which all rights and duties under the original Consulting Agreement were assigned from Town Hall Foundation to MCG. (*See* First Amendment to Consulting Agreement ("FACA"), Ex. 5 attached to MSJ, ECF No. 1–5.) The

FACA also increased TechSkills' payment obligations from MCG from 25% of all cash basis profits generated by performance of services in areas in the Project Universe to 50% of all cash basis profits generated during the first three years from the date of first cash received. (*Id.* at ¶ 3.1(ii).)  The FACA also lists the "scope" the Project Universe to comprise the following projects:  Injured Warrior Program, Ottawa University CompTech Online Program, Galveston Community College, Charter Schools and Pre HigerEducation [*sic*] Projects with Kyle Konold, DOD Schools Project, Republic of China, University of Nevada at Las Vegas, Including Agreements with University of Central Florida, Bank of America – Hire Our Heroes. (*Id.* at p. 2.)

Following the FACA, MCG claims to have successfully contacted government agencies and prominent government officials to solicit funding for TechSkills within the general areas defined by the Project Universe. (*See* Poland Depo. at MSJ 71:1–MSJ 74:8.)  This included a meeting with Charles Ciccolella, Assistant Secretary for Veterans' Employment and Training Service at the Department of Labor, in which MCG requested that block grants from the Workforce Investment Act ("WIA") be allocated to TechSkills. *Id.*  MCG claims that this meeting as well as countless phone calls, emails, letters, and meetings by MCG resulted in large revenues for TechSkills.  (*Id.* at MSJ 71:1–74:8.)  It is unclear from the record when these meetings and communications took place.  MCG alleges that they never received their share of the generated profits from these services. MCG has only received one payment from TechSkills for its services provided in relation to their contractual relationship:  a check for $1,028.50 for two student enrollments at a Veterans Affairs education facility at the U.S. Navy Hospital in San Diego, California. (*See* Mayfield Aff. at ¶4.)

MCG also alleges that it has made several demands upon TechSkills to inspect the TechSkills books and records so that a full accounting can be had as to profits owed, but each of those requests have been denied. (*See id.* at MSJ 109:8– MSJ 110:15; Mayfield Aff. at ¶5.) MCG claims that according to slides from TechSkills' Board of Director Meetings, MCG is

currently owed $13,763,000 for services provided under the Project Universe in relation to item (ii) of Article 1.1 of the Consulting Agreement. (*See id.* at MSJ 111:19–MSJ 112:6, MSJ 113:3–MSJ 114:22, MSJ 165; MSJ 190.)

MCG filed the instant suit alleging five causes of action: (1) breach of contract; (2) unjust enrichment; (3) quantum meruit; (4) full accounting of books and records; and (5) breach of the implied covenant of good faith and fair dealing. MCG's instant Motion for Summary Judgment (ECF No. 13) claims that there are no material issues of fact for trial and asks for judgment to be entered in its favor. TechSkills subsequently filed a Motion for Partial Summary Judgment (ECF No. 21) asking the Court to limit the projects and time period for the projects and to dismiss MCG's second claim for unjust enrichment and third claim for *quantum meruit*.

## DISCUSSION

### A. Legal Standard – Motion for Summary Judgment

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate

an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**B.     Conflict-of-Law**

The Rules of Decision Act, 28 U.S.C. § 1652, requires a federal court to apply, in diversity cases, the law of the state in which it sits. *Erie R. Co. v.* Tompkins, 304 U.S. 64, 58

S.Ct. 817(1938). The Supreme Court eventually expanded its holding in *Erie* to hold that in a diversity action, the federal district court must apply the choice of law rules prevailing in the state where the court is located. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021 (1941).

The Consulting Agreement contains a choice-of-law provision wherein the parties agree that the contract would be construed in accordance with the laws of Delaware. (*See* Consulting Agreement at ¶ 9.2.) Both parties agree that the breach of contract claim in this case is governed by Delaware state law.

However, there remains a question regarding which state's law applies to the remaining claims. The parties are not necessarily in dispute, but have each cited to cases from both states and jurisdictions for their arguments. However, the Court need not spend a significant amount of time on this issue because regardless of which law is chosen, Nevada or Delaware, the outcome is the same.

**C.     Analysis**

    **1.     Breach of Contract**

For a plaintiff to prevail on a breach of contract claim he or she must demonstrate (1) the existence of a valid contract, (2) the breach of an obligation imposed by that contract, and (3) the resultant damage to the plaintiff. *VLIW Technology, LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. Supr. 2003). "It is an elementary canon of contract construction that the intent of the parties must be ascertained from the language of the contract." *Citadel Holding Corp. v. Roven*, 603 A.2d 818, 822 (Del. 1992). After examining the four corners of the document, if ambiguities exist in the language then the court can look at extrinsic evidence to determine the intent of the parties. *Id.*

Both parties agree that the Consulting Agreement and FACA are valid and binding contracts between TechSkills and MCG. Neither party claims that the agreements have been

terminated by either party to date.  TechSkills asserts two defenses to MCG's allegations that TechSkills breached the contract: (1) there was no breach because the terms of the FACA excluded the project area in dispute and (2) if the FACA does include the project area in dispute, MCG did not contribute directly to the revenue as required by the contract.

### a. Material Questions Regarding the Terms of the Contract

MCG alleges that TechSkills has breached the contract because it has failed to pay MCG for its services provided under the contracts.  Plaintiff claims that it secured income to TechSkills under the Project University category (ii) defined in the Consulting Agreement as "projects involving the Department of Defense, Labor, Education and Veteran Affairs which expand [TechSkills'] revenues from DVA's education programs, currently generating $120,000 on an annual basis."  MCG claims that it secured and conducted a highly valuable personal meeting with the Assistant Secretary for Veterans' Employment and Training Service at the Department of Labor where MCG requested block grants of funding available under the Workforce Investment Act ("WIA").  MCG then followed this meeting with other services that provided TechSkills' income attributable to WIA funding.

TechSkills argues that profits made in connection with WIA funding are not part of the scope of Project Universe based on the FACA.  Unlike MCG which claims the FACA expanded the project categories within Project Universe, TechSkills argues that the FACA replaced and redefined the project categories within the Project Universe.  The FACA states that "[TechSkills], [THF], and [MCG] agree that as of the date of the First Amendment that the following projects comprise the Project Universe." (FACA at p. 2.)  TechSkills argues that according to this plain language that the list contained in the FACA was a complete, comprehensive list of the Project Universe and was *not* a supplement to the Consulting Agreement.  As an example, TechSkills explains that the first two project categories listed in the First Agreement – Injured Warrior Program and Ottawa University CompTech Online Program –

are carry-overs from the Project Universe in the Consulting Agreement it would be illogical to suggest that the FACA expanded the Consulting Agreement's Project Universe.

There is clearly a material question of fact regarding whether or not TechSkills breached a contract. While MCG argues that its services provided to TechSkills to secure funding under WIA was covered under the Consulting Agreement because WIA is a project involving the Department of Labor as defined in category (ii) of Project Universe, it has still failed to prove that this was an agreed upon project that was approved by TechSkills under paragraph 1.1 of the Consulting Agreement. Paragraph 1.1 provides in part:

> Consultant shall only undertake a specific project or initiative within the Project Universe after requesting and receiving written authorization from the Company's Chief Executive Officer to proceed.

(*See* Consulting Agreement at ¶1.1.)

Moreover, there is a dispute whether Project Universe was expanded or limited by the FACA. Looking first at the four corners of the document it is unclear if the portion of the Consulting Agreement defining what projects are part of Project Universe (Art. 1.1) is amended by the FACA. Upon first glance, it does not appear that Art. 1.1 was amended because the only three amendments listed in the FACA are: (1) Transferal of Agreement, (2) Payment for Services (Art. 3.1 (ii) is replaced and Art. 3.1(iii) is added), and (3) Payment for Services (deleting section 3.6 and 3.7 of the agreement). The section entitled "SCOPE OF PROJECT UNIVERSE" is apart from the section entitled "AMENDMENTS." In addition, the language falling under the SCOPE OF PROJECT UNIVERSE adds confusion. The language reads that the "following projects *comprise* the Project Universe." As argued by TechSkills, it does seem illogical to specifically include two areas from the Consulting Agreement and omit the remaining areas unless there was an intent to limit the earlier language. However, this does not fully alleviate the aforementioned confusion. Accordingly, the Court finds that the FACA is ambiguous.

Since the FACA is ambiguous, the Court will look to the extrinsic evidence provided to

determine what the amendment covers. *See Eagle Industries, Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1233 (Del. Supr. 1997) ("In construing an ambiguous contractual provision, a court may consider evidence of prior agreements and communications of the parties as well as trade usage or course of dealing."). MCG argues that Admiral Chris Weaver testified at his deposition that the FACA expanded the breadth of the Project Universe based on his reading of the contract and his discussions and interactions with TechSkills CEO Kevin Paulsen and his staff. (*See* Weaver Depo., Ex. 6 attached to MSJ, MSJ 199:5–21; MSJ 202:19–MSJ 204:3.) Therefore, after the FACA, Admiral Weaver and others from MCG continued to work on the projects related to category (ii) under the direct supervision of Mr. Paulsen and with TechSkills employees. (*Id.* at MSJ 205:6–16.) However it is not clear how Admiral Weaver obtained his knowledge of how the amendment was created. He stated that his understanding of the documents came from his practical interaction with Mr. Poland and with Mr. Paulsen. (*Id.* at MSJ 203:4–11.) MGC also argues the absence of evidence (i.e. emails or letters) indicating that TechSkills did not want MCG to work on the "excluded" projects shows that they were not intended to be excluded by the parties.

In direct contrast, TechSkills argues that its then CEO, Kevin Paulsen, stated in his declaration that it was his "clear understanding," that the FACA replaced and superseded the Project Universe as defined in the Consulting Agreement. (Paulsen Decl., Ex. C attached to MSJ Response ¶¶ 3–5.)

Furthermore, TechSkills argues that according to Paulsen, projects involving or relating to the WIA were never included in the Project Universe under the original Consulting Agreement or FACA. (*Id.* at ¶6.) This was due to the nature of the WIA regulations; MCG's activities could not directly affect TechSkills' revenues generated from WIA funds. It is unclear from the evidence provided whether or not this is the case. Accordingly, the Court finds that several issues of fact that preclude a finding of summary judgment do exist.

### b. TechSkills' Request to Limit Time and Scope of Relationship

TechSkills asks the Court to limit the categories of projects at issue and the applicable time frame for those projects in its Partial Motion for Summary Judgment. (*See* Deft's MSJ, ECF No. 21). First, TechSkills would like to focus only on three projects: (1) the Injured Warrior Program (included in the Consulting Agreement and the FACA), (2) the Departments of Defense, Labor, Education and Veterans Affairs (included only in the Consulting Agreement) and (3) Charter Schools and Pre-Higher Education Projects with Kyle Konold (included only in the FACA). Second, TechSkills would like to limit any claim pertaining to any project identified in the Consulting Agreement to be limited to the time period from October 6, 2007 (date of Consulting Agreement) until May 27, 2008 (date of FACA).

The Court will deny both requests. First, TechSkills' evidence regarding whether or not the other listed categories produced any revenue is unpersuasive. TechSkills argues that Poland testified that these ten projects produced no revenue because he is unaware whether any revenue was produced. (*See* Deft MSJ at pp. 10:1–11:5, ECF No. 21.) However, many of Poland's responses were simply that he was "unaware" of any revenue. At the January 5 hearing on these motions, the parties did clarify that three projects did not produce any revenue. **Therefore, these three categories will be eliminated from the trial: the projects involving Deltak/Rasmussen College, the projects involving the National Guard Youth Challenge Cadets and Foundation, and DOD Schools project**.

Furthermore, the Court will not limit the time period regarding the projects. A material dispute in this case is whether or not the projects listed in the Consulting Agreement were incorporated into the FACA. Thus, it would be improper to limit the time period of the projects until that issue is resolved at trial.

### 2. Unjust Enrichment

Under Nevada and Delaware law, a claim for unjust enrichment cannot lie where there is a

contract that governs the parties' relationship. *See Leasepartners Corp., Inc. v. Robert L. Brooks Trust*, 942 P.2d 182, 187 (Nev. 1997)(citing 66 Am.Jur.2d Restitution § 6 (1973)) ("An action based on a theory of unjust enrichment is not available when there is an express written contract, because no agreement can be implied when there is an express agreement.") *accord Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 891 (Del.Ch. 2009)(a claim for unjust enrichment is not available if there is a contract that governs the relationship between parties that gives rise to the unjust enrichment claim).

MCG argues that if the trier of fact determines there was no breach of contract, it then has a claim for unjust enrichment. MCG contends that if it is found that the work related to WIA which it completed was not covered under the FACA, then an equitable remedy should be allowed because the work was performed outside the scope of an agreement.

Article 1 of the Consulting Agreement outlines the lists of services that Town Hall Foundation (as MCG's predecessor) would be willing and able to provide to TechSkills. At the end of paragraph 1.1 of the article, the agreement states: "Consultant[1] shall only undertake a specific project of initiative within the Project Universe **after requesting and receiving written authorization from the Company's Chief Executive Officer to proceed.**" (Consulting Agreement at ¶ 1.1 (emphasis added).) The integration clause at the end of the Consulting Agreement states that it is "the entire agreement of the parties hereto and supersedes all prior representations, proposals, discussions, and communications, whether oral or in writing." (*Id.* at ¶ 9.7.) Furthermore, the agreement "may be modified only in writing and shall be enforceable in accordance with its terms when signed by the parties sought to be bound." (*Id.*)

Therefore, the Court interprets the language of the Consulting Agreement to preclude a claim for unjust enrichment. The contract contemplates situations where work has been done

---

[1] Town Hall Foundation was referred to as Consultant in the agreement.

without written authorization and effectively precludes any restitution for that work under a claim of unjust enrichment. This language is not ambiguous and the Court will give effect to the language. Therefore, under the facts of this case MCG's motion for summary judgment on its unjust enrichment claim is denied and summary judgment is granted in favor of TechSkills.

### 3.     Quantum Meruit

Nevada treats *quantum meruit* claims and unjust enrichment claims very similar. *See Asphalt Products Corp. v. All Star Ready Mix, Inc.*, 898 P.2d 699, 701 (Nev. 1995) (treating unjust enrichment and quantum meruit interchangeably). If there is no express agreement as to compensation, then one can recover the reasonable value of their services under a *quantum meruit* claim. *See Ewing v. Sargent*, 482 P.2d 819, 823 (Nev. 1971); *see also Whiteman v. Brandis*, 372 P.2d 468, 469 (Nev. 1962). Similarly, under Delaware law, a claim for *quantum meruit* can only exist if it is determined the relationship of the parties is not governed by an express contract. *Chrysler Corp. v. Airtemp Corp.*, 426 A.2d 845, 854 (Del.Super. 1980).

As previously discussed there is an express agreement between the parties that addresses when payment for services is authorized or precluded. Accordingly, the Court finds that on the basis of the facts of this case Plaintiff cannot prevail on a claim for *quantum meruit*. Therefore, summary judgment shall be granted in favor of TechSkills on MCG's third cause of action.

### 4.     Accounting

Under Nevada law, in order to prevail on a claim for inspection and accounting, a plaintiff must establish the existence of a relationship of special trust between the plaintiff and defendant. *See Simon v. Bank of America, N.A.*, No. 10-cv-00300-GMN-LRL, 2010 WL 2609436 (D. Nev. July 23, 2010) (citing 1 Am.Jur.2d *Accounts and Accounting* § 55 (2010)). A fiduciary duty exists when one has the right to expect trust and competence in the integrity and fidelity of another. *Powers v. United Services Auto. Ass'n*, 979 P.2d 1286, 1288 (Nev. 1999). There does not appear to be any Nevada cases specifically on point, but other courts have found that a

fiduciary duty or special relationship exists when payment is collected by one party and the other party is paid by the collecting party. *See Wolf v. Superior Court,* 130 Cal.Rptr.2d 860 (Cal.Ct.App. 2003)(In contractual relationships requiring payment by one party to another of profits received, the right to an accounting can be derived from the implied covenant of good faith and fair dealing inherent in every contract, because without an accounting, there may be no way by which such a party entitled to a share in profits could determine whether there were any profits.) [2]

Under Delaware law, an accounting will lie where "1) there are mutual accounts between the parties, 2) the accounts are held by one side and there are circumstances of great complication and 3) a fiduciary relationship exists between the parties and the defendants have a duty to render an accounting." *Carlson v. Hallinan*, 925 A.2d 506, 537 n. 211 (Del.Ch. 2006)(citing *Pan Am. Trade & Inv. Corp. v. Commercial Metals Co.*, 94 A.2d 700, 701 (Del.Ch. 1953)).

The Court finds that there is a fiduciary relationship between MCG and TechSkills that entitles MCG to an accounting. The Consulting Agreement and FACA provide that TechSkills will pay the Consultant a percentage of the cash collected from customers. MCG would be unable to determine if any cash was collected by TechSkills without having access to their records. Furthermore, the Consulting Agreement provides that "Consultant will be allowed to review the cash collections and expenses of [TechSkills] on a quarterly basis to ensure the accuracy of the data." Therefore, the Court grants MCG's motion for summary judgment on their fourth cause of action for a full accounting from TechSkills.

### 5. Breach of the Implied Covenant of Good Faith and Fair Dealing

In Nevada, every contract imposes an implied covenant of good faith and fair dealing that forbids arbitrary, unfair acts by one party that disadvantage the other. *Frantz v. Johnson*, 999

---

[2] The Nevada Supreme Court often turns to California decisions when faced with issue of first impression. *See Volvo Cars of North America, Inc. v. Ricci*, 137 P.3d 1161, 1164 (Nev. 2006).

P.2d 351 (Nev. 2000).  Similarly, in Delaware, "[t]he implied covenant of good faith and fair dealing inheres in every contract and requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain." *Kuroda*, 971 A.2d at 888 (internal quotation marks omitted).  There are several issues of material fact regarding the parties' conduct as previously outlined by the Court in addressing the breach of contract claim.  As such, summary judgment on this cause of action is precluded.

## CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff Mobius Connections Group, Inc.'s Motion for Summary Judgment (ECF No. 13) is **GRANTED in part and DENIED in part**.

Summary Judgment on claims **1, 2, 3 and 5 are DENIED**.

Summary Judgment in favor of MCG on **claim 4 is GRANTED**.  **TechSkills is ordered to provide MCG with a full accounting within forty-five (45) days from the date of this Order**.

**IT IS FURTHER ORDERED** that Defendant TechSkills, LLC's Motion for Partial Summary Judgment (ECF No. 21) is **GRANTED in part and DENIED in part**.

Summary Judgment is **GRANTED** in favor of TechSkills as to claims 2 and 3.

The scope of the projects will not be limited as stated in this Order.

**IT IS FURTHER ORDERED** that the parties shall file a Joint Pre-Trial Order within **sixty (60) days of the date of this Order**.

DATED this 20th day of January, 2012.

_____
Gloria M. Navarro
United States District Judge